# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **DONALD R. BURKE, II,** | ) |
| Plaintiff, | ) Case No. 2:04CV00005 |
| v. | ) **OPINION** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,** | ) By: James P. Jones<br>) Chief United States District Judge |
| Defendant. | ) |

In this social security case, I affirm the final decision of the Commissioner.

*I. Background.*

Donald R. Burke, II filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2004) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner

must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.* When conducting this review, I do not reweigh conflicting evidence, make credibility determinations, or substitute my judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d at 1453, 1456 (4th Cir. 1990). It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. *See id.*

Accordingly, "[t]he issue before [me], therefore, is not whether [Burke] is disabled, but whether the ALJ's finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

This is Burke's fourth application for benefits. He submitted his current application on April 5, 2000, alleging disability since November 25, 1997, and received a hearing before an administrative law judge ("ALJ") on March 8, 2001. By decision dated July 2, 2001, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council reviewed the decision and, on September 20, 2002, remanded the case for further administrative proceedings and issuance of a new decision, having found that the ALJ

improperly applied res judicata and failed to consider all the claimant's impairments. (R. at 419.)

A supplemental hearing was held on March 4, 2003, and by decision dated March 17, 2003, the ALJ again found that the plaintiff was not disabled under the Act. The Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

## II. Facts.

Burke is now forty years old. He completed the tenth grade and last worked as a truck driver at various coal mines. That work involved heavy lifting, climbing on and off the trucks, and conducting basic truck maintenance, such as changing oil and tires. Burke claims disability due to knee and back problems, and problems with his "nerves." (R. at 28.)

The record includes medical evidence from Gurcharan S. Kanwal, M.D.; S.C. Kotay, M.D.; Bert E. Tagert, M.D.; Howard Mize, Jr., M.D.; Susan Bland, M.D.; Russell McKnight, M.D.; Mina Patel, M.D.; B.Wayne Lanthorn, Ph.D.; Steven Altabet, Ph.D.; Inez White, M.D.; Stone Mountain Health Services; Norton Community Hospital; and St. Mary's Family Center. The record also includes two

Physical Residual Functional Capacity ("PRFC") assessments and two Psychiatric Review Technique ("PRT") forms by state agency physicians, and testimony from medical expert Thomas Edward Schacht, Psy.D.

Based upon the evidence, the ALJ determined that the plaintiff is unable to return to past relevant work, but has the residual functional capacity ("RFC") to perform a significant range of light work, as defined by the regulations. Based upon the testimony of a vocational expert ("VE"), the ALJ found that there existed a significant number of jobs in the national economy that the plaintiff could perform.

*III. Analysis.*

Burke asserts that the ALJ's opinion is not supported by substantial evidence. Specifically, he argues that the ALJ erred by failing to: (1) find that he suffers from severe non-exertional impairments, and (2) give controlling weight to the opinion of his treating physician, Dr. Russell D. McKnight. For the following reasons, I disagree.

*A.*

Burke argues that the ALJ erred by failing to find that he suffers from the severe non-exertional impairments of depression, anxiety, and problems with his

- 4 -

"nerves." Burke argues that his impairments are severe enough to preclude him from working.

> Non-exertional impairments are:
>
> those limitations and restrictions that relate to the ability to meet the demands of a job other than the strength demands, such as functional limitations due to anxiety or depression, difficulty maintaining concentration and attention, understanding and remembering detailed instruction, and other mental demands required to work.

20 C.F.R. § 404.1520a (2004). "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). However, "[t]he mere presence of mental disturbance does not automatically indicate a severe disability." *Wiley v. Chater*, 967 F. Supp. 446, 452 (D. Kan. 1997) (*citing Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)).

The ALJ found that Burke's allegations of a mental impairment "are simply not supported by the documentary evidence." (R. at 39). This determination is primarily one of credibility; the ALJ found that Burke's subjective complaints were not credible and the majority of Burke's own doctors agreed, stating that he was "malingering." (*Id.*) The ALJ's finding is supported by substantial evidence.

- 5 -

Case 2:04-cv-00005-JPJ   Document 16   Filed 06/13/05   Page 5 of 12   Pageid#: 89

Burke initially sought evaluation for depression on August 8, 1994, at the request of his attorney in connection with a DIB claim. (R. at 32.) At Burke's first mental evaluation, Dr. McKnight noted that he was alert, correctly oriented, coherent, and cooperative with a flat affect. (*Id*.) Dr. McKnight completed a medical assessment and a PRT and determined Burke was mildly depressed and had limitations meeting an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 33.) However, the ALJ rejected Dr. McKnight's opinion because he based his diagnosis on Burke's subjective complaints, rather than on objective medical evaluations. (*Id*.) Furthermore, treatment notes from physicians who had previously examined Burke do not contain any signs or symptoms of depression. (*Id*.)

Dr. Mina Patel evaluated Burke in 1995, and noted no symptoms of depression or any other emotional disturbances, other than Burke's own statements that he was depressed and nervous. (*Id*.) She opined that Burke was limited only in his ability to perform complex job tasks, and indicated no other limitations. (*Id*.)

Next, Dr. Kaur evaluated Burke and opined that he had "seriously limited or no useful ability to function in all areas of making occupational performance." (*Id*.) However, Dr. Kaur also based his conclusion on Burke's subjective complaints, rather than on objective clinical findings. (*Id*.) The objective clinical findings

showed Burke was "alert, oriented times three, spontaneous, coherent, and logical." (*Id*.)

B. Wayne Lanthorn, Ph.D., and Steven Altabet, Ph.D., evaluated Burke in 1997 and 2000, respectively, and both primarily diagnosed him with malingering. (R. at 34.) Both administered a Wechler Adult Intelligence Scale-Revised ("WAIS-R") and found Burke's I.Q. score to be 68 and 53. (*Id*.) However, both physicians noted that Burke had attempted to avoid the correct answers and exaggerated his symptoms and complaints. (*Id*.) Dr. Lanthorn performed an additional evaluation in 2000, and obtained similar results but made no comment regarding Burke's credibility. (R. at 36). The ALJ rejected the results of all three tests because Burke's malingering affected those results. (*Id*.)

Amalia Collins, a licensed clinical social worker at St. Mary's Family Center, evaluated Burke in 2001, and noted exaggerated symptoms of depression and cognitive inabilities. (R. at 35.) She found that Burke had also exaggerated his physical ailments. (*Id*.) For instance, he stated that he needed a bilateral knee replacement, but no physician's record had ever indicated plans for such treatment. (*Id*.)

Dr. Inez White evaluated Burke in 2001, and opined that he had depression with severe impairments. (R. at 698). The ALJ rejected this diagnosis because it

does not support a severe impairment, as indicated by Burke's Global Assessment of Functioning ("GAF") score of 63.[1]  (R. at 36).

The ALJ relied most heavily on the opinion of Dr. Thomas E. Schacht, a licensed clinical psychologist who appeared and testified at the hearing before the ALJ. (R. at 35.) Dr. Schacht thoroughly reviewed the record, attempting to reconcile the many inconsistencies, and determined that no accurate evidence supported a finding of a severe non-exertional impairment. (*Id*.) For instance, Dr. Schacht opined that the only credible and reliable evaluation of Burke's cognitive status is his school records. (*Id*.) These records indicate an I.Q. of 87, which places Burke in the mid-to-high borderline range. (*Id*.)  Burke's school records also contain additional competency tests, which were inconsistent with the results of Burke's more recent consultative examinations. (*Id*.)  In the absence of any medical explanation for the extreme difference in results between Burke's former and current evaluations, Dr. Schacht concluded that the current evaluations were the result of malingering, and thereby unreliable. (*Id*.)  Burke's true I.Q. does not reflect any cognitive or mental impairments. (*Id*.)

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health.  The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning between 50 and 60, some difficulty in functioning between 60 and 70, and no more than slight impairment in functioning between 70 and 80.  Superior functioning is represented by 100.  *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

For these reasons, I find that the ALJ did not err in failing to find a severe non-exertional impairment. Under the Act, it is always a claimant's burden to provide evidence of disability. *See* 20 C.F.R. §§ 404.1512, 404.1514, 416.912, 416.914 (2004); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). In order to carry this burden, the claimant must demonstrate a physical or mental impairment that results from anatomical, physiological, or psychological abnormalities demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C.A. § 423(d)(3) (West 2003 & Supp. 2004); *see also* § 1382(a)(3)(C) (West 2003). Here, the ALJ found that Burke had not provided reliable and credible evidence of a severe non-exertional impairment, and therefore did not meet his burden. (R. at 37). Because I do not reweigh conflicting evidence or make credibility determinations, and because substantial evidence supports the ALJ's finding, I affirm the Commissioner's decision.

*B.*

Next, Burke argues that the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. McKnight. Dr. McKnight treated Burke from August 8, 1994, through August 14, 2001. (R. at 32.) He diagnosed Burke with mild depression and he determined that Burke had limitations of the severity to meet a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 33.) Burke argues that

- 9 -

Case 2:04-cv-00005-JPJ   Document 16   Filed 06/13/05   Page 9 of 12   Pageid#: 93

this opinion is entitled to controlling weight because the record contains opinions from other physicians that support Dr. McKnight's clinical findings.

The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining doctors, which constitute a major part of the proof in disability cases. *See McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983). The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." (*Id.*)

The ALJ properly rejected Dr. McKnight's opinion for three reasons: (1) Dr. McKnight's opinion is not well supported by other physicians' opinions, (2) his findings are not supported by clinical techniques that are medically accepted, and (3) the evidence does not establish that Dr. McKnight was Burke's treating physician.

First, Dr. McKnight's opinion is not well supported by other physicians' opinions. In fact, three evaluating physicians primarily diagnosed malingering, and

indicated an inability to obtain credible results. Also, additional physicians did not diagnose Burke with limitations of the severity that Dr. McKnight noted. For instance, Dr. Mina Patel opined that Burke was limited only in his ability to perform complex job tasks; Dr. McKnight opined that Burke had no useful abilities. (R. at 33, 36).

Second, a diagnosis and opinion should be supported by "medically acceptable clinical . . . techniques." 20 C.F.R. § 404.1527(e)(1) (2004). However, Dr. McKnight's own notes do not support the severity of the limitations noted. (R. at 36). When Dr. McKnight reevaluated Burke in 1996, he noted that Burke was slightly unkempt with a flat affect, but also stated that he was alert, correctly oriented, and conversed in a coherent and logical manner. (*Id*.) Then, despite noting his correct mental status and coherent manner, Dr. McKnight indicated Burke was "seriously limited or [had] no useful ability in all areas of making occupational, performance, and personal-social adjustments" (*Id*.) Dr. McKnight's only medically accepted objective clinical finding was a GAF score of 60, which once again does not reflect the severity noted by Dr. McKnight. (*Id*.)

Third, the ALJ properly questioned whether Dr. McKnight should be considered a treating physician. (*Id*.) Although Dr. McKnight prescribed muscle relaxants and medications for sinus problems and allergies, which may indicate that

he functioned partially as a primary care physician, he never performed a physical examination. (*Id*.) In addition, the ALJ noted that it is unclear how much contact Dr. McKnight actually had with Burke because a nurse practitioner, Ms. Browning, actually signed a fair number of Dr. McKnight's notes. (*Id*.) In addition, following Dr. McKnight's diagnosis of mild depression with severe limitations, Burke did not return to Dr. McKnight and received no treatment for approximately two years. (*Id*.)

For these reasons, I find that the ALJ was not required to give controlling weight to Dr. McKnight's opinion, and determine that the Commissioner's decision is supported by substantial evidence.

### *IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: June 13, 2005

/s/ JAMES P. JONES
Chief United States District Judge

- 12 -

Case 2:04-cv-00005-JPJ   Document 16   Filed 06/13/05   Page 12 of 12   Pageid#: 96